## Marrowbone Coal & Coke Company v. Coleman.

### (Decided December 12, 1913).

### Appeal from Pike Circuit Court.

1. Fraud—Good Faith—Deceit—Facts Stated.—In a business transaction between shrewd business men, representing a corporation, and an old, uneducated and ignorant man, good faith requires a full disclosure of all facts to him.

2. In this case the agent told him it would cost $1,500 to get a certain quit-claim deed, which though technically true, deceived him because in fact they were only to pay $1,000, for the release, but paid $500 to an attorney to use his influence to procure it.

J. J. MOORE for appellant.

ROBERT L. MILLER for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming on the original and cross-appeals.

In May, 1903, appellee was the owner of a certain tract of land on Marrowbone Creek in Pike County, Kentucky, and at that time conveyed to the Northern Coal & Coke Co. the mineral and mining rights and privileges in same. Subsequently he conveyed the surface of a portion of the boundary to his son, Spurlock Coleman, who in turn conveyed same to appellant. Upon the tract of land so conveyed by Spurlock Coleman appellant erected its mining plant, coal tipple, coke ovens, and other improvements. Subsequently and in October, 1910, appellant desiring to enlarge its plant entered into a written contract with appellee by which appellee was to convey it the surface of certain adjoining lands in which he had previously sold the mining rights to the Northern Coal & Coke Company, for the price of $5,000.

Upon investigation of the title it was ascertained by appellant that appellee in his deed to the Consolidated Coal & Coke Company had also granted to that Company

certain rights to the surface as to building and erecting mining plants, tipples, and coke ovens, and other improvements thereon, as would be inconsistent with the purpose for which appellant desired the property.

Thereupon the agents of appellant told appellee that he would have to procure a quit-claim from the Consolidated Coal & Coke Company before they could carry out the trade; but this appellee declined to do and told them to procure it themselves.

After some considerable negotiation the agents of appellant finally told appellee that they could procure the quit-claim from the Consolidated people by the expenditure of $1,500.00, and to this he finally agreed.

The manner in which the agreement between appellant and the Consolidated Company was reached was this: They approached the attorney for the Consolidated Company at Pikeville and upon his suggestion they agreed with him that they would give him a $500 fee if he would use his influence with the Consolidated Coal Company to procure a quit-claim deed for $1,000, all of which was unknown to appellee. He did procure a quit-claim deed from the Consolidated Coal Company for $1,000, and was paid the $500 fee. The $1,500 so paid out by appellant was deducted from the original purchase price of $5,000 and appellee was paid the balance.

Thereafter learning the facts appellee instituted this action for the two-fold purpose of recovering both the $1,000 paid to the Consolidated Company and the $500 paid to the attorney. The lower court declined to adjudge appellee the $1,000 paid to the Consolidated Company, but did adjudge him entitled to recover the $500 paid the attorney. From that judgment the Marrowbone Company appeals, and appellee prosecutes a cross-appeal.

It is perfectly clear from the record that appellee understood that the purpose of appellant in buying the surface of this land from him was to enlarge its mining plant, which was already on the adjoining land conveyed to it by appellant's son, and appellee having previously granted to the Consolidated Company certain rights and privileges on the surface of the land which would be inconsistent and might interfere with the contemplated improvements by appellant, it was equitable and just that the purchase should be abated to the extent that it was necessary to perfect the title in view of the purpose for which the land was to be used. We

are, therefore, of the opinion, that, inasmuch as appellee agreed to such abatement in the purchase price the judgment of the lower court was proper as to the $1,000 paid the Consolidated Company.

But, the payment of the $500 fee presents a different question. The attorney was the regular attorney of the Consolidated Coal Company, and when approached by the agents of the Marrowbone Company offered to use his influence with his own client to procure the quit-claim if the Marrowbone Company would pay him $500. This it agreed to do, but no where does it appear in the record that appellee was informed of this purpose; on the contrary he was told that it would cost them $1,500 to get this release, and while that was technically true, he not knowing of the arrangement with the attorney was induced to agree to an abatement of $1,500 in the purchase price believing that amount was being demanded by the Consolidated Company, when in truth and in fact it was only asking $1,000. The record is convincing that the transaction as to the $500 fee was carefully concealed from him at all stages of the negotiations.

He was a man of sixty-eight years of age, uneducated, and with little experience in business matters. It is not difficult to understand how he was over-reached and deceived by these shrewd and calculating business men when they told him that it would cost them $1,500 to get the release. It is evident that he understood them to mean that the Consolidated Company would not make it for less, and it is plain that when appellant made him pay this exorbitant fee for services rendered to it and for it, he was deceived, overreached and imposed upon.

In other words Coleman, not being in possession of all the facts, agreed without knowing it, to pay the attorney a $500 fee for rendering appellant and not himself a service.

It is inconceivable that the manager of the Northern Coal & Coke Company, known to be an upright business man, would not have agreed to this until the attorney was paid $500 in addition to the $1,000 which his own company was willing to accept.

Plainly this old man was imposed upon, overreached and deceived to the extent of this attorney's fee.

It cannot be for so slight a service the Marrowbone Company would ever have agreed to give the attorney $500 unless they could make Coleman pay it in the set-

tlement; certainly Coleman would not have paid it if he had known it.

When analyzed it was an agreement between the Marrowbone Company and the attorney of the Consolidated Coal Company that it (the Marrowbone Company) would give him a $500 fee to be paid by Coleman without his knowledge, if he (the attorney) would procure from his client (the Consolidated Company) a quit-claim deed the Marrowbone Company desired.

The element of good faith in its dealings with this old man upon the part of appellant is entirely lacking.

Judgment affirmed on original and cross-appeals.